HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

    Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,

    Defendant.

CASE NO. C11-1550 RAJ

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on plaintiff Costco Wholesale Corporation's ("Costco") motion for partial summary judgment, and defendant Nationwide Mutual Insurance Company's ("Nationwide") cross-motion for summary judgment. Dkt. # 28, # 33. Costco moves for summary judgment on two issues: (1) whether Washington law applies to this dispute, and (2) whether Nationwide's conduct violated certain Washington Administrative Code ("WAC") provisions. Dkt. # 28. Nationwide moves for summary judgment on all of Costco's claims for violation of the Washington Insurance Fair Conduct Act ("IFCA"), violation of the Washington Consumer Protection

Act ("CPA"), and bad faith coverage by estoppel. Having reviewed the memoranda, exhibits, and the record herein, the court DENIES Costco's partial motion for summary judgment and DISMISSES Costco's Washington-based claims.[1]

## II. BACKGROUND

Costco and Bravo Farms Cheese LLC ("Bravo") entered into a vendor agreement by which Bravo sold Costco a cheese product to be sold in various Costco warehouses. Dkt. # 30 (Sefton Decl.) ¶¶ 5-7. Pursuant to the terms of the agreement, Bravo added Costco as an additional insured on its Commercial General Liability insurance policy. *Id.* ¶ 6, Ex. 2 (Vendor Agreement §§ 16); Dkt. # 29 (Von Seggern Decl.), Exs. 2-5; Dkt. # 35 (Biddle Decl.), Ex. 1-42 & 1-43 (2010 policy). In October 2010, Costco learned of a number of illnesses relating to the cheese Bravo sold to Costco in California, Nevada, New Mexico, Arizona, and Colorado. Dkt. # 30 (Sefton Decl.) ¶ 8. Personal injury claims related to these illnesses were made against Bravo and Costco in those states. Dkt. # 34 (Davis Decl.) ¶ 3. Costco tendered these claims to Nationwide, and Nationwide accepted and began adjusting these claims. *Id.* ¶ 4. Nationwide's claims specialist, David Davis, believed that Bravo's excess/umbrella policy was available for the claims, and repeated that belief to Costco on four occasions. *Id.* ¶¶ 4-6; Dkt. # 30 (Sefton Decl.) ¶¶ 9-14, Exs. 3-5. On April 26, 2011, Davis informed Costco that the umbrella policy had been cancelled by Bravo as of March 1, 2010, and was not available for Costco. Dkt. # 30 (Sefton Decl.) ¶ 15-17, Ex. 6.

## III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a

---

[1] Costco has not requested oral argument. Nationwide has requested oral argument. However, this matter may be decided on the papers submitted. Accordingly, Nationwide's request for oral argument is DENIED.

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). In Washington, the court must first determine whether an actual conflict exists between the laws or interests of Washington and the laws or interests of another state. *Erwin v. Cotter Health Ctrs.*, 161 Wash. 2d 676, 692, 167 P.3d 1112 (2007). If an actual conflict exists, the court must then determine the controlling law under the "most significant relationship" test. *Id.* at 693-94. Washington courts follow the Restatement (Second) Conflict of Laws (1971) Section 145 for tort and CPA claims. *Rice v. Dow Chem. Co.*, 124 Wash. 2d 205, 213, 875 P.2d 1213 (1994).

**A. Actual Conflict**

California's insurance-regulating statute and consumer protection act do not allow for private causes of action. *Moradi-Shalal v. Fireman's Fund Ins. Co.*, 46 Cal. 3d 287, 304 (1988); *Zephyr Park v. Superior Court*, 213 Cal. App. 3d 833, 840 (1989). The parties and the court have been unable to locate California authority providing a remedy for coverage by estoppel for bad faith claims. Accordingly, the parties and the court

agree that an actual conflict exists between Washington and California law on all of Costco's claims against Nationwide.

**B. Most Significant Relationship**

Under the most significant relationship test, the court must determine which state has the most significant relationship to the occurrence and the parties. The court must consider (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *Johnson*, 87 Wash. 2d at 581 (citing Restatement 2d of Conflict of Laws § 145). The court's approach is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found. *Id.* If the contacts are evenly balanced, the second step is to consider the interests and public policies of the concerned states. *Id.* at 582. The extent of the interest of each of the potentially interested states should be determined on the basis of, among other things, the purpose sought to be achieved by their relevant local law rules and the particular issue involved. *Id.*

Costco argues that in the bad faith context, the "injury" is the largely financial impact on the insured, Costco, which is located in Washington. Costco offers no legal authority for this proposition. Nationwide argues that Costco has not provided evidence of "financial injury" in Washington, and even if it had, Washington is not the place of injury.

In *Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175 (9th Cir. 1988), a beneficiary brought a state court action for breach of contract and breach of implied covenant of good faith and fair dealing against an insurer to recover benefits under a life insurance policy. With respect to place of injury, the Ninth Circuit focused on where plaintiff resided when the injury of denial of benefits and continued denial of benefits occurred. *Id.* at 1179. In *Polygon N.W. Co. v. Nat'l Fire & Marine Ins. Co.*, Case No. 11-92 Z, 2011 WL 2020749

(W.D. Wash. 2011), the court addressed choice of law rules in the context of claims for violation of the IFCA, violation of the CPA, and coverage by estoppel. The court found that the "injury" sustained was the cost incurred in defending the underlying litigation, which took place in Oregon. *Id.* at *6 n.9. In *Tilden-Coil Constructors, Inc. v. Landmark Am. ins. Co.*, Case No. 09-1574 JLR, 721 F. Supp. 2d 1007, 1016 (W.D. Wash. 2010), the court, also analyzing choice of law in tort and CPA claims, found that the place of injury and place of conduct were of less significance when the alleged injury did not occur in a single, ascertainable state, as with personal injuries and injuries of tangible things.

Here, the underlying claims arose in several states, including California, Nevada, New Mexico, Arizona, and Colorado. Dkt. # 34 (Davis Decl.) ¶ 3. However, during the time when Nationwide informed Costco that Bravo's excess policy was available and later informed Costco that it was not, Costco was a resident of Washington. *See* Dkt. # 30 (Sefton Decl.) ¶ 2 (Costco headquarters and principle place of business is in Washington). Accordingly, this factor is neutral.

With respect to place of conduct in the insurance context, courts generally hold that the place of conduct is where the insurance company makes its coverage decisions. *See Lange*, 843 F.2d at 1179 (place of conduct is home office of insurance company where insurance company made decision not to pay benefit); *Polygon*, 2011 WL 2020749 at *6 (place of conduct is where insurer denied the claim and performed the allegedly deficient investigation). Here, Davis was located in Northern California and was handling the personal injury claims under Nationwide's policies issued to Bravo. Dkt. # 34 (Davis Decl.) ¶¶ 2-4. Davis has been the primary contact at Nationwide to communicate with Costco's representatives regarding the claims. *Id.* ¶ 5. Davis informed Costco on several occasions that Bravo's excess policy was available for the claims. *Id.* ¶ 4-6. On April 26, 2011, Davis informed Costco for the first time that the excess policy had been cancelled and was not available for the claims. *Id.* ¶ 7. This is

not a case where Costco negotiated and purchased an insurance policy in Washington. Rather, Costco required Bravo, a California company, to add Costco as an additional insured on its California-issued Commercial General Liability insurance policy. Dkt. # 30 (Sefton Decl.) ¶ 6, Ex. 2 (Vendor Agreement § 16); Dkt. # 44 (2d Biddle Decl.) ¶ 4, Ex. 3. Given these undisputed facts, the court finds that the place of conduct was California.[2] Accordingly, this factor favors California.

With respect to the third factor, Costco's headquarters and principal place of business is Washington. Dkt. # 30 (Sefton Decl.) ¶ 2. There is no evidence that Nationwide is incorporated or has a principal place of business in California or Washington. Accordingly, this factor favors Washington.

With respect to the center of the relationship, courts look to the location where the insurer makes coverage decisions, where the contract of insurance was requested and issued, and where the underlying liability occurred and is being litigated. *Lange*, 843 F.2d at 1180; *Polygon*, 2011 WL 2020749 at *6. Here, under a vendor agreement that required application of Washington law, Costco required Bravo to add Costco as an additional insured on its Commercial General Liability insurance policy. Dkt. # 30 (Sefton Decl.) ¶ 6, Ex. 2 (Vendor Agreement §§ 16, 22). Bravo is a California company that used a California insurance agent to acquire its Commercial General Liability policy from Nationwide. Dkt. # 29 (Von Seggern Decl.), Exs. 1, 3-6 (identifying California insurance agent); Dkt. # 44 (2d Biddle Decl.), Ex. 3. Bravo added Costco as an additional insured on the policy that was issued in California under its 2007, 2008 and 2010 policies. Dkt. # 29 (Von Seggern Decl.), Exs. 2-5; Dkt. # 35 (Biddle Decl.), Ex. 1-42 & 1-43 (2010 policy). Although Washington courts consider a given policy with multiple insureds as separate contracts between the insurer and each insured, *Unigard*

---

[2] The existence of a Des Moines, Iowa mailing address on Davis's written correspondence to Costco does not alter this conclusion. There is no evidence that any of Nationwide's conduct occurred in Iowa.

*Mut. Ins. Co. v. Spokane Sch. Dist.*, 20 Wash. App. 261, 266, 579 P.2d 1015 (1978), this does not change the fact that Costco did not seek insurance through a Washington broker or enter into an insurance contract in Washington.

Under the vendor agreement between Bravo and Costco, Bravo sold Costco a cheese product that was sold in Costco Warehouses in California, Arizona, New Mexico, Colorado and Nevada. Dkt. # 30 (Sefton Decl.) ¶ 7. In October 2010, Costco learned of a number of illnesses relating to the cheese Bravo sold to Costco in those states. *Id.* ¶ 8. Personal injury claims related to these illnesses were made against Bravo and Costco in California, Arizona, New Mexico, Colorado, and Nevada. Dkt. # 34 (Davis Decl.) ¶ 3. Costco tendered these claims to Nationwide, and Nationwide accepted and began adjusting these claims. *Id.* ¶ 4. Davis believed that Bravo's excess policy was available for the claims, and repeated that belief to Costco on four occasions. *Id.* ¶¶ 4-6; Dkt. # 30 (Sefton Decl.) ¶¶ 9-14, Exs. 3-5. Davis was located in California during these communications and coverage determinations, however, Costco's representative with whom Davis communicated was located in Washington. Dkt. # 30 (Sefton Decl.) ¶¶ 9-14, Exs. 3-5. On April 26, 2011, Davis for the first time informed Costco that the umbrella policy had been cancelled as of March 1, 2010, and this communication was received in Washington. *Id.* ¶ 15-17, Ex. 6.

The only facts supporting a finding that the relationship of the parties is centered in Washington is that the communications between the claims specialist and Costco were received in Washington where Costco is incorporated and has its principal place of business. The vendor agreement between Costco and Bravo does not govern the relationship between Costco and Nationwide. Even if the court included the vendor agreement as a contact with Washington, the court would still find that the evidence overwhelmingly supports a finding that the parties' relationship was centered in California where the insurance policy was issued, where Costco was added as an

additional insured, where coverage determinations were made, and where at least some of the underlying claims were made.

On balance of all four factors, the court finds that the most significant contacts between Costco and Nationwide occurred in California. Since the court does not believe the contacts are evenly balanced, the court does not move on to the second step to consider the interests and public policies of the concerned states. Accordingly, California law applies to this dispute, and the court DENIES Costco's motion for partial summary judgment.[3] Additionally, since there is no dispute that California law does not provide relief with respect to Costco's IFCA, CPA, and bad faith coverage by estoppel claims, the court DISMISSES those claims.

## IV. CONCLUSION

For all the foregoing reasons, the court DENIES Costco's motion for partial summary judgment and FINDS that California law applies to this dispute. Dkt. # 28. Accordingly, the court also DISMISSES Costco's claims that are not available under California law. Nationwide's cross-motion for partial summary judgment is therefore MOOT. Dkt. # 33. The clerk is directed to terminate Costco's second motion for partial summary judgment as MOOT. Dkt. # 58. The clerk is also directed to strike the trial date and all related dates. If Costco believes it can amend its complaint to allege claims under California law, it may file a motion to amend with the proposed amended complaint no later than November 1, 2012 pursuant to the Federal Rules of Civil Procedure and Local Civil Rules. If no further action is taken by the parties by November 1, 2012, the court will terminate this case.

---

[3] Costco also seeks a determination that Nationwide's actions violated WAC provisions regarding claims handling. This issue is now MOOT because Washington law does not apply to this dispute.

1   Dated this 19th day of September, 2012.

_____
The Honorable Richard A. Jones
United States District Judge